## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **Case No. CR05-2023** |
| **vs.** | **REPORT AND RECOMMENDATION** |
| **D'ALAN RAMONE THURMOND,** | |
| **Defendant.** | |

_____

This matter comes before the court pursuant to Defendant D'Alan Thurmond's August 25, 2005 motion to suppress (docket number 14). A hearing on the motion was held on September 8, 2005. Mr. Thurmond was represented by Ms. Jane Kelly and the government was represented by Special Assistant United States Attorney Rebecca Goodgame Ebinger. The defendant's motion should be denied for the reasons set forth below.

## I.  FINDINGS OF FACT

Mr. Thurmond was charged in an indictment returned on July 27, 2005. The indictment charged Mr. Thurmond with violations of four federal crimes. Count 1 charged Mr. Thurmond with possession of a firearm by an individual convicted of misdemeanor domestic abuse in violation of 18 U.S.C. §§ 922(g)(9) and 924(e)(1). Count 2 charged Mr. Thurmond with possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Counts 3 and 4 charged Mr. Thurmond with possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(9), 841(b)(1), and 851.

Mr. Thurmond was stopped by Waterloo Police Officer Greg Kemp on August 2, 2004. Mr. Thurmond's vehicle was stopped because Officer Kemp observed loud music emanating from Mr. Thurmond's vehicle in violation of Waterloo city ordinance. Mr. Thurmond does not contest the validity of the initial stop.

During the stop, Officer Kemp asked for and received Mr. Thurmond's driver's license. Officer Kemp returned to his vehicle and determined Mr. Thurmond's license was valid, Mr. Thurmond had no outstanding warrants, and that Mr. Thurmond was arrested four years prior on a narcotics charge. Officer Kemp returned Mr. Thurmond's license and told him to quiet his music. Officer Kemp did not issue a citation at that time.

Upon returning Mr. Thurmond's license, Officer Kemp asked Mr. Thurmond whether he had any contraband in his car. Mr. Thurmond replied that he did not. Officer Kemp then requested permission to search Mr. Thurmond's vehicle. Mr. Thurmond denied permission to search. Officer Kemp proceeded to engage Mr. Thurmond in conversation that culminated in a second request to search the vehicle. Mr. Thurmond denied the second request. After consent to search was denied, Officer Kemp claimed that he observed a single, quarter-inch long marijuana stem in the rubber weatherstripping of the driver's side window of Mr. Thurmond's vehicle. Officer Kemp stated, at the time, that he found a marijuana seed or stem.[1] Officer Kemp picked up the stem, but placed it back on the vehicle. At the September 8 hearing, Officer Kemp stated that he did not seize the stem because he felt he should leave it for the drug sniffing dog to find. Officer Kemp continued to engage Mr. Thurmond in conversation and called for the drug dog.

Upon the arrival of the drug dog, Mr. Thurmond was asked to exit his vehicle. Mr. Thurmond did not comply with Officer Kemp's request. He instead fled the scene in his vehicle and led Officer Kemp and other officers on a high-speed chase. Mr. Thurmond

---

[1] This statement was recorded on the video recorder in Officer Kemp's police car. The video was entered into evidence as Government Exhibit 1 during the September 8, 2005 hearing.

eventually abandoned his vehicle and fled on foot. Officer Kemp pursued Mr. Thurmond. Officer Kemp observed Mr. Thurmond with a small black and silver gun in his hand that Mr. Thurmond subsequently threw into a wooded area. Mr. Thurmond proceeded to climb a chain-link fence topped with barb-wire and eluded arrest. Mr. Thurmond was not apprehended on August 2, 2004.[2]

Waterloo Police located the firearm Mr. Thurmond had thrown into the wooded area. The vehicle Mr. Thurmond had abandoned during the chase was also searched. Twenty-eight individually-wrapped rocks of crack cocaine weighing a total of 3.49 grams were found underneath the driver's seat of the abandoned vehicle.

## II. CONCLUSIONS OF LAW

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." See United States v. Fuse, 391 F.3d 924, 927 (2004). The United States Court of Appeals for the Eighth Circuit has held that a "traffic stop constitutes a 'seizure' within the meaning of the Fourth Amendment." United States v. Martinez, 358 F.3d 1005, 1009 (8th Cir. 2004), quoted in Fuse, 391 F.3d at 927. The validity of a traffic stop depends on the presence of "'at least a reasonable, articulable suspicion that criminal activity' has occurred or is occurring." Fuse, 391 F.3d at 927, quoted in United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001). A violation of traffic laws establishes sufficient probable cause for law enforcement officers to stop a vehicle. United States v. Barry, 98 F.3d 373, 376 (8th Cir. 1996), quoted in Fuse, 391 F.3d at 927. When law enforcement officers stop a vehicle for probable cause, the officers are "entitled to conduct an investigation reasonably related in scope to the circumstances that

---

[2] Mr. Thurmond was apprehended in March 2005, at which time he was arrested and issued citations incident to the August 2, 2004 chase for failing to stop at a stop sign and failing to stop at a red light. Mr. Thurmond was also issued a citation for loud music that Officer Kemp had not issued at the time of the initial traffic stop on August 2.

initially" justified the stop. United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000), quoted in Fuse, 391 F.3d at 927. During a valid traffic stop, law enforcement officers "may detain a motorist while [a police officer] completes certain routine tasks, such as writing a citation and completing computerized checks of a driver's license, vehicle registration, and criminal history." Fuse, 391 F.3d at 927.

The conclusion of a traffic stop represents a watershed point in a law enforcement officer's interaction with an individual. Upon the conclusion of a traffic stop, which the Eight Circuit has defined as the point at which a ticket, warning, all-clear point, or other "objective indicia of the officer's intent" is presented, "the Fourth Amendment applies to limit any subsequent detention or search." United States v. $404,905.00 in U.S. Currency, 182 F.3d 643, 648 (8th Cir. 1999). An "officer cannot continue to detain a motorist after the initial stop is completed, unless the officer has 'a reasonably articulable suspicion for believing' criminal activity is afoot." Fuse, 391 F.3d at 927 (quoting United States v. Beck, 140 F.3d 1129, 1134 (8th Cir. 1998)). Although an officer's reasonable suspicion must amount to "more than an inchoate 'hunch,'" the Supreme Court of the United States has stated that "the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." United States v. Sokolow, 490 U.S. 1, 7 (1989), quoted in Fuse, 391 F.3d at 929. A court must "consider the totality of the circumstances in light of" the investigating officer's experience. Fuse, 391 F.3d at 929. "Although each factor giving rise to reasonable suspicion may appear innocent when viewed by itself, 'a combination of factors may warrant further investigation when viewed together." Id. (quoting United States v. Linkous, 285 F.3d 716, 720 (8th Cir. 2002)).

Had Mr. Thurmond not led Officer Kemp on a chase through Waterloo and abandoned his vehicle to flee on foot, the issue set forth above would be difficult. However, Mr. Thurmond's actions foreclose his ability to challenge the legality of his detention after the initial traffic stop. The Eighth Circuit Court of Appeals has held "that

a defendant's response to even an invalid arrest or <u>Terry</u> stop may constitute independent grounds for arrest." <u>United States v. Dawdy</u>, 46 F.3d 1427, 1431 (8th Cir. 1995). In its decision, the Eighth Circuit relied on precedent established by its sister circuits that considers resistance "to even an illegal arrest to be grounds for a second, legitimate arrest." <u>Id.</u> at 1430–31. Thus, this court will not consider the legality of Mr. Thurmond's detention after the initial traffic stop or whether Officer Kemp had "'a reasonably articulable suspicion for believing' criminal activity [was] afoot." <u>Fuse</u>, 391 F.3d at 927 (quoting <u>Beck</u>, 140 F.3d at 1134). The Eighth Circuit held that the presence of probable cause for arrest in such a situation renders any evidence discovered in an individual's automobile or on an individual's person incident to arrest or abandonment admissible. <u>See</u> <u>Dawdy</u>, 46 F.3d at 1431.

Mr. Thurmond seeks the suppression of the gun and narcotics seized on August 2, 2004, as fruit of an illegal search. He cites no authority for his claim of entitlement to flee from a traffic stop. Mr. Thurmond alleges that Officer Kemp improperly detained him after the initial traffic stop had concluded and that Officer Kemp lacked reasonable, articulable suspicion to detain Mr. Thurmond after the conclusion of the traffic stop. The government alleges that the initial traffic stop of Mr. Thurmond was lawfully extended as an investigative stop and that, regardless of the legality of Mr. Thurmond's detention beyond the initial stop, Mr. Thurmond's subsequent illegal actions provided independent grounds for the seizure of the evidence at issue. It must also be remembered that the police seized nothing prior to the defendant's flight other than a possible marijuana stem that was on the defendant's car door.

Waterloo Police had sufficient probable cause to arrest Mr. Thurmond after Mr. Thurmond fled the initial traffic stop, led officers on a high-speed chase through Waterloo, brandished a weapon, and did not heed numerous requests by Officer Kemp to stop. Any evidence seized from Mr. Thurmond's vehicle, person, or any evidence he abandoned on August 2, 2004, after he eluded police, should be admissible.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[3] to this report and recommendation within ten (10) days of the date of this report and recommendation, that the defendant's August 25, 2005, motion to suppress be denied.

September 12, 2005.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[3]Any party who objects to this report and recommendation must serve and file specific, written objections within ten (10) court days from this date. A party objecting to this report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.